UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILLY JOE WILLARD, JR.,

Petitioner,

v.

ERIKA LYNN WILLARD,

Respondent.
_____/

Case No. 17-cv-11645

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
STEPHANIE DAWKINS DAVIS

**OPINION AND ORDER DENYING RESPONDENT'S MOTION TO DISMISS [10]**

**I. INTRODUCTION**

On May 24, 2017, Billy Joe Willard, Jr. ("Petitioner") commenced this action against Erika Lynn Willard ("Respondent"), seeking custody of the parties' two children. *See* Dkt. No. 1. In Petitioner's Amended Complaint, filed June 7, 2017, he alleges Respondent violated the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), as implemented by the International Child Abduction Remedies Act (ICARA), 22. U.S.C. § 9001, *et seq*. Dkt. No. 4.

The matter is presently before the Court on Respondent's Motion to Dismiss [10], pursuant to Federal Rules of Civil Procedure 12(b)(6). Dkt. No. 10. The motion was filed on June 26, 2017. *See id*. Petitioner responded on July 13, 2017, and Respondent replied on July 27, 2017. *See* Dkt. No. 12, 13. Upon review of the

-1-

pleadings, the Court determines that a hearing will not aid in the resolution of this motion. E.D. Mich. LR 7.1(f)(2). For the reasons discussed herein, the Court **DENIES** Respondent's Motion to Dismiss [10].

## II. BACKGROUND

Petitioner and Respondent, both American citizens, were lawfully married in Tennessee in 2010. Dkt. No. 4, p. 5 (Pg. ID 326). In 2013, Respondent gave birth to Petitioner's two children—"ADW" and "MLW" —in Florida. *Id*. Petitioner is an active duty member of the United States Air Force and was assigned to a military base in Vicenza, Italy in 2015.[1] *Id*. at 8. Respondent and the children moved with Petitioner to Italy. *Id*.

In July 2016, Respondent and the children accompanied Petitioner back to the United States. *Id*. at 10. While Petitioner underwent training in Washington D.C. in August and September, Respondent and the children visited family in Michigan. *Id*. On September 29, 2016, Petitioner arrived in Michigan to fly back to Italy with Respondent and the children. *Id*. Respondent refused to return to Italy and would not allow Petitioner to take the children back to Italy. *Id*.

---

[1] Petitioner has selected Texas as his home state, as required by federal and military law. Dkt. No. 4, p. 6 (Pg. ID 327).

On October 31, 2016, Respondent filed a complaint against Petitioner in Oakland County Circuit Court ("Michigan state court") seeking a divorce and the custody of the parties' two children. *Id.* at 11–12. Respondent served Petitioner with the Michigan state court case filing on December 22, 2016. *Id.* at 11.

In January 2017, Petitioner filed a parallel divorce case against Respondent in Johnson County, Texas ("Texas state court"). *Id.* at 12. Petitioner argued that the Michigan court lacked jurisdiction to proceed with a child custody case under the Uniform Child Custody Jurisdiction and Enforcement Act (the "UCCJEA"). Dkt. No. 4-24, pp. 17–25 (Pg. ID 547–55). Petitioner further argued that the court with proper jurisdiction over the matter was the court in Johnson County, Texas, and that the Texas state court should confer with the Crezzeao, Italy Family Court. *Id.*

The Texas state court conferred with the Michigan state court about which state court had jurisdiction over the proceedings, as Petitioner requested. Dkt. No. 4, p. 13 (Pg. ID 334). On April 5, 2017, both state courts determined that the Michigan state court should retain jurisdiction over the custody and divorce proceedings. *Id.* Two weeks after the state courts determined jurisdiction was proper in Michigan, Petitioner filed a new custody case in Italy seeking a divorce and custody of the couple's children. Dkt. No. 4-27.

On May 24, 2017, Petitioner filed a Complaint in this Court seeking return of the children to Italy pursuant to the Hague Convention. Dkt. No. 1. He amended his Complaint on June 7, 2017. Dkt. No. 4.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted) (quoting FED. R. CIV. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (2009) (applying the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of his or her factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir.

2008). However, the Court need not accept mere conclusory statements or legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678.

In ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## IV. DISCUSSION

### A. The Hague Convention and ICARA

"The Convention on Civil Aspects of International Child Abduction was adopted by the signatory nations in order 'to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access.' " *Friedrich v. Friedrich*, 983 F.2d 1396, 1399–400 (6th Cir. 1993) (quoting Hague Convention, Preamble). It seeks "to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court" to resolve their custody

disputes. *Id*. at 1400. The United States and Italy are both signatories to the Hague Convention.

The Hague Convention provides United States courts with jurisdiction "to determine only rights under the Convention and not the merits of any underlying child custody claims." 22 U.S.C. § 9001(b)(4). Under the convention, removal or retention of a child is "wrongful" where:

> (a) it is in breach of the other parent's rights of custody—defined as rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence—under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been exercised but for the removal or retention.

Hague Convention, Arts. 3, 5. "Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies." 22 U.S.C. § 9001(a)(4).

The petitioning parent bears the burden of proving by a preponderance of the evidence that the removal or retention was "wrongful." 22 U.S.C. § 9003(e)(1)(A). If the petitioning parent establishes a prima facie case for returning the child, the burden shifts to the responding parent to establish any one of the following exceptions:

> (1) the petitioner was not actually exercising rights of custody at the time of the removal or retention, or the petitioner consented to or

subsequently acquiesced in the removal or retention (Hague Convention, Art. 13a);

(2) the child objects to being returned and has reached an age and maturity level at which it is appropriate to consider his or her views (Hague Convention, Art. 13);

(3) there is a grave risk returning the child would result in physical or psychological harm, or an otherwise intolerable situation (Hague Convention, Art. 13b);

(4) returning the child would violate policies regarding the protection of human rights and fundamental freedom (Hague Convention, Art. 20); or

(5) the proceeding commenced more than a year after the removal or retention, and the child is now settled in his or her new environment (Hague Convention, Art. 12).

*Flores-Aldape v. Kamash*, 202 F. Supp. 3d 793, 800 (N.D. Ohio 2016). These exceptions are "narrow" and must be narrowly construed. 22 U.S.C. § 9001(a)(4); State Department Text and Legal Analysis of the Hague International Child Abduction Convention, 51 Fed. Reg. 10,493, 10,509 (Mar. 26, 1986).

**B. Respondent's Motion to Dismiss Based on Petitioner's Alleged Waiver**

The case is presently before the Court on Respondent's Motion to Dismiss, and accordingly the Court will only resolve the narrow issue of whether the Court

has jurisdiction. [2] Because the Court is denying Respondent's motion, an evidentiary hearing will follow wherein both parties may present evidence upon which the Court may resolve the merits of Petitioner's complaint.

Respondent argues in her Motion to Dismiss that Petitioner waived his rights under the Hague Convention by arguing in Texas state court that Texas was the proper forum in which his claims should be adjudicated. Dkt. No. 10, p. 24 (Pg. ID 671). Only after the Texas state court found Michigan was the proper forum did Petitioner invoke his Hague Convention claims in Italy and this Court. *Id*. at 11. Respondent further argues that a finding of waiver furthers the Convention's goals by preventing forum shopping.[3] Dkt. No. 10, p. 25 (Pg. ID 672).

---

[2] The Court understands that the Hague Convention seeks a "prompt" and "expeditious" return of wrongfully removed children. Here, the State Department has written the Court that it seeks a resolution within six weeks of the initiation of proceedings. The Court does not resolve cases, particularly those of such a sensitive nature, without providing both parties with an opportunity to present evidence. Here, Respondent has not yet been able to provide evidence on her behalf. To have the Court make a rash and ill-informed decision based solely on Petitioner's allegations, in order to satisfy the State Department's request, would not be in the interest of the parties, or the minor children.

[3] Respondent's allegations of forum shopping are not wholly meritless. This Court is at least the fourth court in which the parties have filed claims related to custody of the minor children. However, the Court also notes that a purpose of the Hague Convention was "to prevent an abducting parent from gaining an advantage in custody litigation by manipulating the forum in which the suit is brought." *Holder v. Holder*, 305 F.3d 854, 873 (9th Cir. 2002).

"Waiver is the intentional relinquishment of a known right." *United States v. Fowler*, 819 F.3d 298, 306 (6th Cir. 2016). There are very few cases analyzing the concept of waiver in the context of the Hague Convention. Respondent cited to several that she believes support her argument.

In *Journe v. Journe*, the District of Puerto Rico held that a petitioning parent waived his Hague Convention rights by voluntarily dismissing his action for divorce and custody in France, having believed that he and his spouse had reconciled. 911 F. Supp. 43 (D.P.R. 1995). The petitioning parent's voluntarily dismissed suit had been brought pursuant to provisions of the Convention. *Id.* at 45. The district court found that this constituted a waiver, having been an "intentional or voluntary relinquishment of a known right" where the relinquishing party had "both knowledge of [the right's] existence and an uncoerced intent to relinquish it." *Id.* at 47–48. (writing that acts constituting waiver "should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of this conduct is possible").

Several circuits outside of the Sixth Circuit have mentioned waiver while analyzing consent or acquiescence. In *Nicolson v. Pappalardo*, the First Circuit wrote that agreeing to let a state court determine final custody would be thought of as "an acquiescence or, alternatively, a waiver of Hague Convention rights." 605 F.3d 100, 107 (1st Cir. 2010). Respondent also cited to the Fifth Circuit's opinion

in *Larbie v. Larbie*, which held "consent for a particular tribunal to make a final custody determination—which may be established by entry of a temporary custody order—suffices to establish an affirmative defense under the Convention." 690 F.3d 295, 309 (5th Cir. 2012) (holding a parent who gave "clear and unequivocal" consent for a state court to make a final custody determination and did not initiate custody proceedings abroad "consented" and "acquiesced" under the Hague Convention). Nevertheless, despite citing to cases where acquiescence was analyzed, Respondent asserts in her reply that her argument for waiver is "utterly distinct" from the concept of acquiescence. Dkt. No. 13, p. 3 (Pg. ID 748).

The Ninth Circuit has not treated a decision to file for custody in state court, without raising Hague Convention claims, as a waiver of Hague Convention rights. *See, e.g.*, *Gaudin v. Remis*, 415 F.3d 1028, 1034 (9th Cir. 2005) (holding that a federal court was not bound by a state court's custody decision where the state court did not actually adjudicate the Hague Convention claim); *Holder v. Holder*, 305 F.3d 854, 872–73 (9th Cir. 2002) (finding that the petitioner's suit for custody in California state court did not exhibit an "uncoerced intent to relinquish" rights under the Hague Convention).

The Sixth Circuit cases Respondent cited are not on point with her argument that this case should be dismissed based on waiver before an evidentiary hearing. *See Simcox v. Simcox*, 511 F.3d 594, 603 (6th Cir. 2007) (finding that the father

did not consent or acquiesce to the mother's removal of the children); *March v. Levine*, 249 F.3d 462, 468–70 (6th Cir. 2001) (finding that the district court properly rejected fugitive disentitlement argument as a means to deprive the petitioner of his day in court); *Friedrich v. Friedrich*, 78 F.3d 1060, 1070 (6th Cir. 1996) (analyzing consent and acquiescence).

Reviewing the cases upon which Respondent relies, the Court notes that each district court held an evidentiary hearing, the factual findings of which were provided to the Courts of Appeals to review. *See Nicolson*, 605 F.3d at 103 (noting that the district court took evidence before writing an "extensive decision"); *Larbie*, 690 F.3d at 304 (noting that both parties testified and presented evidence at a hearing before the district court, followed by written summation of arguments); *Journe*, 911 F. Supp. at 44 (noting that the court held a hearing on the merits over three months after the petition was filed and ordered the parties to submit post-trial briefing the following month). Respondent has not cited a single case—let alone binding precedent—where the district court dismissed a Hague Convention claim based on waiver at the motion to dismiss stage.

In the present case, neither the Michigan nor the Texas state court issued a final decision on the merits of the parties' complaints. In fact, the opposite has occurred: the Texas state court found the Michigan state court had jurisdiction, and then the Michigan state court stayed its proceedings pending resolution of the

present case. *See* Dkt. No. 9. Furthermore, the exhibits attached to the motion do not establish that Petitioner knowingly and intentionally relinquished his Hague Convention rights before the Texas or Michigan state courts.

The Court does not find that Respondent has proven that Petitioner waived his Hague Convention rights, when the Court views the facts in the light most favorable to the nonmoving party. The Court shall hold an evidentiary hearing, where both sides will be able to present factual evidence. Respondent is welcome to address any of the narrow exceptions to the Hague Convention at this hearing. The Court shall also order the parties to submit post-hearing briefs, summing up their arguments, to be submitted two weeks after the hearing takes place.

## V. Conclusion

Accordingly, for the reasons discussed in detail above, the Court **DENIES** Respondent's Motion to Dismiss [10].

**IT IS FURTHER ORDERED** that the parties shall appear for a status conference to set dates for an evidentiary hearing on Thursday, August 10, 2017 at 2:30 p.m.

**IT IS SO ORDERED.**

Dated:   August 2, 2017

/s/Gershwin A Drain
Hon. Gershwin A. Drain
United States District Court Judge